## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

FERN KLODZINSKI,                    )
                                    )
                    Plaintiff,      )
                                    )
                                    )  Case No. CIV-20-229-JFH-KEW
                                    )
COMMISSIONER OF THE SOCIAL          )
SECURITY ADMINISTRATION,            )
                                    )
                    Defendant.      )

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Fern Klodzinski (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 54 years old at the time of the decision. She has at least a high school education and no past relevant work. Claimant alleges an inability to work beginning on December 28, 2015, due to panic attacks, anxiety, agoraphobia, and depression.

### Procedural History

On April 28, 2016, Claimant filed her application for widow's insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Her application was denied initially and upon reconsideration. On July 29, 2019, ALJ David W. Engel conducted an administrative hearing from Tulsa, Oklahoma, at which Claimant testified. On August 26, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals

Council, and on May 8, 2000, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light and sedentary work, with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ erred by (1) failing to follow correct legal standards when evaluating medical opinion evidence; (2) conducting an improper symptom evaluation by using her mental health symptoms against her; and (3) the ALJ's RFC assessment and step-five determination are not supported by substantial evidence.

## Consideration of the Consultative Opinion Evidence

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease, obesity, depression, and anxiety. (Tr. 20). He determined Claimant could perform a full range of work at the light and sedentary exertional levels, with additional limitations. Specifically, Claimant was unable to climb ropes, ladders, and scaffolds and was unable to work in environments exposing her to unprotected heights and dangerous moving machinery parts. She could understand, remember, and carry

out simple instructions in a work-related setting and could interact with co-workers and supervisors under routine supervision. She was unable to interact with the general public more than occasionally, regardless of in person or over the telephone contact. The ALJ acknowledged Claimant was "afflicted with symptoms from a variety of sources to include moderate intermittent pain and fatigue, and allied disorders, all variously described, that are of sufficient severity so as to be noticeable to her at all times, but nevertheless is able to remain attentive and responsive in a work-setting and would be able to perform work assignments within the above-cited limitations." (Tr. 23).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of office helper, mail clerk, and routing clerk, all of which he found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant was not under a disability from December 28, 2015, through the date of the decision. (Tr. 29).

Claimant contends the ALJ failed to properly evaluate opinions from consulting psychologist, Larry Vaught, Ph.D. She argues that the ALJ's failure to properly consider Dr. Vaught's opinions regarding her mental limitations resulted in the ALJ's improper consideration of the evidence at step three when assessing the "paragraph B" criteria and throughout the rest of the sequential evaluation process. Claimant also focuses on the ALJ's

5

failure to discuss why he rejected limitations by Dr. Vaught that she suffered from marked supervisory and co-worker restrictions, as well as a marked limitation in her ability to respond appropriately to usual work situations and changes in routine work settings.

Claimant underwent a psychological examination with Dr. Vaught on October 22, 2018. She reported chronic anxiety with panic symptoms, which had become worse since the death of her husband. She had difficulty being around others, even close relatives, and did not like leaving her house. Claimant reported she had not taken any psychotropic medications since 2005. Her mental status examination revealed speech that was intelligible and fluent, logical thinking, and constricted affect. She could repeat six digits forward and four backward and had an average I.Q. Dr. Vaught concluded Claimant's overall demeanor was anxious, and she reported a regressed lifestyle. Her results on the Rorschach reflected the likelihood of perceptual and emotional disruption when overwhelmed, with indices of hyperemotionality and depression. He diagnosed Claimant with panic disorder with agoraphobia, unspecified depressive disorder, and persistent complex bereavement disorder. (Tr. 617-21).

On November 6, 2018, Dr. Vaught also completed a mental medical source statement of Claimant's abilities to perform work-related activities. Under her ability to understand, remember, and

carry out instructions, he noted both mild and moderate limitations. Specifically, he determined Claimant had moderate limitations in her abilities to understand and remember complex instructions, carry out complex instructions, and in her ability to make judgments on complex work-related decisions. He made his determinations based upon Claimant's testing. Regarding Claimant's ability to interact appropriately with supervisors, co-workers, and the public and respond appropriately to changes in a routine work setting, Dr. Vaught determined Claimant suffered from marked limitations in her abilities to interact appropriately with the public, supervisors, and co-workers. She also had a marked limitation in her ability to respond appropriately to usual work situations and to changes in a routine work setting.[2] Dr. Vaught based the limitations on Claimant's diagnosis of panic disorder and depression and her results on the Rorschach. He noted it was "unknown" on what date her limitations were first present. (Tr. 622-24).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c), 416.927(c). He must provide specific, legitimate

---

[2]    The medical source statement form completed by Dr. Vaught defines "marked" as when "[t]here is serious limitation in this area. There is a substantial loss in the ability to effectively function." (Tr. 622).

reasons for rejecting any such opinions. The ALJ must consider several factors in weighing any medical opinions. *Id*. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996), citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").

The ALJ discussed Claimant's examination with Dr. Vaught in his decision. Regarding her social function, he noted Dr. Vaught observed Claimant to be "very anxious" and that her activities of daily living included a regressed lifestyle. The ALJ discussed Dr. Vaught's testing of Claimant, including intelligence testing and academic performance testing. He discussed her results on the Rorschach. The ALJ noted Dr. Vaught's diagnosis of Claimant with panic disorder with agoraphobia, unspecified depressive disorder, and persistent bereavement disorder. (Tr. 26-27).

Regarding Claimant's mental impairments, the ALJ discussed the opinion evidence from the state agency reviewing psychologist from March of 2017, wherein it was determined Claimant was capable of simple, routine, repetitive tasks, superficial contact with coworkers and the general public, and was able to adapt to simple changes in the workplace and carry out simple goals and plans as directed by supervisors. (Tr. 27, 128-29). The ALJ assigned "great weight" to the opinion, noting, however, that "the totality of evidence is more consistent with the above RFC." (Tr. 27). Nowhere in the decision did the ALJ specifically discuss Dr. Vaught's findings on the mental medical source statement. Dr. Vaught's "marked" functional limitations in Claimant's ability to engage in social interactions at work and her response to changes in the work setting appear to conflict with the limitations the ALJ included in the RFC. A court cannot substitute its opinion or that of Defendant for the ALJ. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). On remand, the ALJ should discuss Dr. Vaught's opinions from the mental medical source statement and give specific reasons if he chooses to reject them.[3]

---

[3]    On remand, the ALJ should also consider Dr. Vaught's diagnosis of Claimant with panic disorder with agoraphobia at the earlier

### Evaluation of Symptoms

Claimant also contends the ALJ improperly dismissed her subjective symptoms by using her mental health symptoms against her. Because the evaluation of Claimant's symptoms is tied closely to the RFC determination, after properly considering the opinions of Dr. Vaught in conjunction with the other evidence of record, the ALJ should reconsider his assessment of Claimant's subjective symptoms on remand. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined.").

### Step Four and Step Five Determinations

In the RFC assessment, the ALJ determined Claimant could understand, remember, and carry out simple instructions in a work-related setting and interact with co-workers and supervisors under routine supervision. Claimant, however, was unable to interact

---

steps in the sequential process. Defendant, however, is correct that the marked functional limitations assessed by Dr. Vaught on the mental medical source statement are distinct from the analysis undertaken by the ALJ involving the "paragraph B" criteria at steps two and three of the sequential evaluation process. *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of metal impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.").

with the general public more than occasionally, regardless of the interaction being in person or over the telephone. He found she was "able to remain attentive and responsive in a work setting and could perform work assignments consistent with the limitations in the RFC. (Tr. 23). Because the ALJ's consideration of Dr. Vaught's opinions may result in further limitations in the RFC, on remand, the ALJ should reassess his findings at steps four and five of the sequential process, including Claimant's subjective symptoms, and determine what work, if any, she can perform.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 23rd day of August, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE